**ROCKET JEWELRY BOX, INC., Plaintiff,**

v.

**QUALITY INTERNATIONAL PACKAGING, LTD., Defendant.**

**No. 95 CIV. 7900(RLE).**

United States District Court, S.D. New York.

March 3, 2003.

---

See also 2001 WL 38285.

Michael D. Lesh, New York City, for defendant.

Lewis Eslinger, Garden City, NY, for plaintiff.

## OPINION AND ORDER

ELLIS, United States Magistrate Judge.

## I. INTRODUCTION

On May 13, 2002, this Court presided over a trial to determine the relief that plaintiff Rocket Jewelry Box, Inc. ("Rocket") is entitled to receive from defendant Quality International Packaging, Ltd. ("Quality"), following the award of an arbitration panel ("the Panel"). The Panel presided over all matters related to the infringement of Rocket's United States Patent No. Des. 333, 264 ("the '264 patent") by Quality's line of products. On January 8, 2001, the Panel issued its award stating, *inter alia*, that (1) the '264 patent was valid and enforceable, (2) Quality's "Florence" and "Marseille" lines of jewelry boxes infringed Rocket's validly-held '264 patent, and (3) that the infringement had been willful since February 5, 1999. In an opinion dated May 10, 2002, this Court confirmed the award.

A number of issues were presented at trial, and the Court will address them in turn. First, Rocket seeks a ruling that Quality's "Firenza" and "Marakesh" lines of jewelry boxes, which replaced the infringing Florence and Marseille lines subsequent to the arbitration award, also infringe the '264 patent. Quality has opposed this request with a motion in limine to exclude any evidence of lines introduced after the Panel's award. Second, Rocket seeks an enhancement of damages pursuant to 35 U.S.C. § 284, while Quality contends that Rocket elected to proceed only under 35 U.S.C. § 289 to recover Quality's profits. Third, Rocket seeks to recover prejudgment interest. Finally, Rocket requests a permanent injunction against Quality with regard to sales of infringing products.

For the reasons which follow, the Court will not entertain evidence of allegedly infringing products not brought before the Panel, namely the Firenza and Marakesh lines. The Court also finds that Rocket has not presented evidence sufficient to enhance its award pursuant to 35 U.S.C. § 284. Rocket has instead made an election to recover profits under 35 U.S.C. § 289.

IT IS THEREFORE ORDERED THAT Quality pay to Rocket the sum of $65,905, plus prejudgment interest. Furthermore, Rocket's motion for a permanent injunction against Quality is **GRANTED.**

## II. BACKGROUND

The instant case stems from a complaint filed on September 15, 1995, against Noble Gift Packaging, Inc. ("Noble"), and Noble's

owner, Ralph Herzog ("Herzog"), regarding the sale of jewelry boxes. Quality was joined as a defendant on December 8, 1998. On February 15, 2002, defendants filed a motion for partial summary judgment. Defendants argued that Rocket's claims regarding two of its patents, numbered 316,036 and 306,973, were barred by doctrines of *res judicata* and collateral estoppel, because of a stipulation of dismissal with prejudice that had been ordered by Judge Kimba M. Wood on May 17, 1995, in a prior action commenced in 1994. In an opinion dated January 16, 2001, Chief Judge Michael Mukasey granted the motion with respect to the claims against Noble and Herzog. *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 2001 WL 38285, at *1 (S.D.N.Y. Jan.16, 2001). He denied summary judgment with respect to Quality, concluding that the defendants had failed to produce any evidence indicating that "the parties to the settlement agreement in the [prior action], Rocket, Noble, and Herzog, [had] intended to release Quality." *Id.*

On March 29, 1999, Rocket and Quality agreed by stipulation to submit "all of the issues" in the litigation to a panel of three arbitrators. Defendants' [sic] Exhibits One Through Nine in Opposition to Plaintiffs' [sic] Motion to Confirm Arbitration Award ("Def.Exh.") 2 at ¶ 1. Their stipulation signed on January 18, 2000, confirmed that the arbitration would "proceed based on all of the issues related to the validity and infringement of U.S. Patent Des. 333,-264 ..." Def. Exh. 4 at ¶ 8. Also in that stipulation, the parties agreed that the determination of damages would be referred to the district court. *Id.* at ¶ 9. The case was stayed by Judge Mukasey pending the outcome of the arbitration. Following the Panel's determination that Quality had willfully infringed the '264 patent, Rocket moved the district court to confirm the arbitration award, and Quality cross-moved for partial vacatur of the award. On November 29, 2001, the parties consented to trial before the undersigned pursuant to 28 U.S.C. § 636(c). The Court confirmed the Panel's award prior to the damages trial.

## III. DISCUSSION

### A. Quality's Motion in Limine

#### 1. Exclusion of Evidence Regarding the Firenza and Marakesh Lines

██ The Panel found Rocket's '264 patent to be valid and enforceable. It concluded that Quality's Florence and Marseille jewelry boxes infringed the '264 patent and that such infringement was willful. Def. Exh. 1 at ¶¶ 2–3. Rocket claims that subsequent to the Panel's ruling, Quality made "small cosmetic changes" to the Florence and Marseille lines by introducing the Firenza and Marakesh lines of jewelry boxes. Trial Transcript ("Tr.") at 6. While Rocket requests the Court to determine whether the new lines infringe the '264 patent, Quality seeks to exclude evidence concerning them.

In support of its position, Quality argues that the Firenza and Marakesh lines were not the subject of the Panel's award of infringement, and therefore any evidence relating to them must be excluded. Defendant's Memorandum of Law in Support of Its Motion in Limine ("Def.Mem.") at 8. Quality further argues that any assessment of profits with respect to those products would be improper without a prior finding of infringement, *id.*, and that Rocket cannot ask the Court to make a finding of infringement without giving Quality the benefit of discovery or an evidentiary hearing. Defendant's Reply Memorandum of Law in Further Support of Its Motion in Limine ("Def. Reply Mem.") at 10–11.

Rocket argues that, as a matter of law, the Court can make a determination that the Firenza and Marakesh lines are not sufficiently different from the infringing Florence and Marseille lines. Tr. at 12. It maintains that the Court should apply the test set forth in *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 528, 20 L.Ed. 731 (1871), to assess whether the Firenza and Marakesh boxes infringe the '264 patent. Tr. at 9. In *Gorham*, 81 U.S. (14 Wall.) at 528, the Supreme Court held that if an "ordinary observer, giving such attention as a purchaser usually gives, [would find that] two designs are substantially the same, [and] if the resemblance is such as to deceive such an observer [into] supposing it to be the other, the first one patented is infringed by the other." *See also Eastern America Trio Products, v. Tang Electronic Corp.*, 97 F.Supp.2d 395, 405 (S.D.N.Y.2000).

However, the Court need not assess the evidence of infringement. The arbitration agreement signed by the parties on March 29, 1999, clearly indicated that "all of the issues" in the litigation were to be submitted to arbitration. The January 18, 2000 stipulation clarified that the Panel would determine infringement of the '264 patent, while the determination of damages would be left to the district court. The Court finds it would be inappropriate to interfere and make a finding of infringement without giving the parties the opportunity to arbitrate this claim. Furthermore, the Court has retained jurisdiction solely to determine what relief is due to Rocket as a result of the Panel's finding of infringement. Accordingly, evidence regarding the Firenza and Marakesh lines will not be considered.

### 2. Enhancement of Damages

Damages in patent cases are governed by 35 U.S.C. §§ 284–89. The two tradi-tional forms of recovery are profits and damages. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 505, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964). "In patent nomenclature what the infringer makes is 'profits,' what the owner of the patent loses by such infringement is 'damages.'" *Id.* (internal quotations and citations omitted). Only damages are recoverable by a plaintiff under 35 U.S.C. § 284, regardless of what profits defendant has made from the infringement. *See Braun Inc. v. Dynamics Corp. of America*, 975 F.2d 815, 824 (Fed.Cir.1992); *Panduit v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir.1978) (*quoting Aro*, 377 U.S. at 507, 84 S.Ct. 1526). Section 284 provides, in relevant part:

### § 284. Damages

Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court ... [T]he court may increase the damages up to three times the amount found or assessed.

Pursuant to 35 U.S.C. § 289, an additional remedy exists for design patents, namely, an award of the infringer's profits. Section 289 provides:

### § 289. Additional remedy for infringement of design patent

Whoever during the term of a patent for a design, without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable to the owner to the extent of his total profit, but not less than $250,

recoverable in any United States district court having jurisdiction of the parties. Nothing in this section shall prevent, lessen, or impeach any other remedy which an owner of an infringed patent has under the provisions of this title, but he shall not twice recover the profit made from the infringement.

The remedy of compensatory damages for infringement evolved in courts of law and historically could be enhanced, "but recovery of an infringer's profits evolved in courts of equity and could not be increased." *Braun*, 975 F.2d at 824 (citations omitted). Thus, the provision of § 284 allowing damages to be trebled may not also be applied to an award of the infringer's profits under § 289. *Braun*, 975 F.2d at 824; *see also Nike, Inc. v. Wal–Mart Stores, Inc.*, 138 F.3d 1437, 1445 (Fed.Cir.1998); D. Chisum, 5 Patents § 20.03[5].

In its April 4, 2002 submission, Rocket outlined the remedies under §§ 284 and 289, and then went on to state, "[f]or the purposes of the damage trial[,] Rocket has elected to proceed under [3]5 U.S.C. § 289." Plaintiff's Memorandum on the Elements of Damages ("Damages Mem.") at 4. Quality thereupon moved to exclude any evidence on the enhancement of damages under § 284. Rocket claims, however, that it did not make an affirmative election under § 289. Tr. at 26; Plaintiff's Opposition to Defendants' [sic] Motion in Limine to Exclude Evidence Relating to the Enhancement of Damages Under 35 U.S.C. § 284 ("Pl.Opp.") at 1. Rocket purportedly seeks to utilize the assessment of total profits under § 289 as the award that it should receive under § 284 as "damages adequate to compensate for the infringement." Pl. Opp. at 1–2.

█ Rocket has misinterpreted the law in this area. In order to recover compensatory damages pursuant to § 284,

"a claimant must prove actual damages, that is, his entitlement to lost profits." *Water Technologies*, 850 F.2d at 671, n. 13. In demonstrating causation, "[t]he patentee must show a reasonable probability that 'but for' the infringement, it would have made the sales that were made by the infringer." *Pentech Intern., Inc. v. Hayduchok*, 931 F.Supp. 1167, 1173 (S.D.N.Y.1996); *Rite–Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed.Cir. 1995). While evidence of the infringer's profits may be taken into account in calculating a patent owner's actual damages, such profits are not themselves recoverable under § 284. *Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.*, 761 F.2d 649, 654–55 (Fed.Cir.1985); *Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d 660, 672–73 (Fed.Cir.1988). The infringer's profits are not an automatic measure of the patentee's damages. *Water Technologies*, 850 F.2d at 672–73. The patent owner claiming that lost profits are equivalent to the infringing sales must first show entitlement to the value of the infringer's profits. *Id.* at 672. To do so, the patentee must satisfy the four-part test for causation set forth in *Panduit*, 575 F.2d at 1156, by proving the following: "(1) demand for the patented product, (2) absence of acceptable non-infringing substitutes, (3) his manufacturing and marketing capability to exploit the demand, and (4) the amount of the profit he would have made." *See also Water Technologies*, 850 F.2d at 672.

█ Rocket incorrectly assumes that it can assess Quality's profits under § 289, and then immediately seek enhancement under § 284. It has failed to offer any evidence of causation or to provide any calculations of lost sales. None of the authority cited by Rocket stands for the proposition that damages can be trebled based on Quality's total profits without a showing under the *Panduit* test. Accord-

ingly, Rocket has made a *de facto* election to proceed under 35 U.S.C. § 289 for recovery of Quality's profits.

## B. Prejudgment Interest

Quality argues that Rocket waived its request for prejudgment interest by not including it in the pretrial order. However, pursuant to Rule 54(c) of the Federal Rules of Civil Procedure, the Court finds that the issue was not waived. "[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleading." FED.R.CIV.P. 54(c). The issue of prejudgment interest is collateral to a finding of damages, which was the purpose of this trial, and the issue is properly before the Court.

Prejudgment interest is generally awarded to a patent owner on an award of compensatory damages. *See General Motors Corp. v. Devex Corp.,* 461 U.S. 648, 655–56, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983); *Sensonics, Inc. v. Aerosonic Corp.,* 81 F.3d 1566, 1574 (Fed.Cir.1996)("prejudgment interest serves to make the patent owner whole, for damages properly include the foregone use of money of which the patentee was wrongly deprived"). In *Devex,* 461 U.S. at 656, 103 S.Ct. 2058, the Supreme Court found that an award of prejudgment interest is consistent with the purpose behind § 284. "In the typical case an award of prejudgment interest is necessary to ensure that the patent owner is placed in as good a position as he would have been had the infringer entered into a reasonable royalty agreement." *Id.* at 655, 103 S.Ct. 2058. However, it is not clear that the same considerations would apply to an award under § 289.

The Court has already determined that Rocket elected to recover Quality's profits on the infringing products under § 289. The case law provides little guidance as to whether prejudgment interest is available for an award of infringer's profits. In *Catalina Lighting Inc. v. Lamps Plus, Inc.,* 295 F.3d 1277, 1291 (Fed.Cir. 2002), the Federal Circuit stated that "the award of infringer profits under § 289 also constitutes damages adequate to compensate ..." (internal quotations omitted). The design patent owner in that case was permitted to recover the infringer's profits under § 289, "plus prejudgment interest," *id.* at 1292, thereby implying that courts have discretion in this area. Quality has offered no reason why Rocket should be denied prejudgment interest. Moreover, the infringer has benefitted from the use of profits to which it was not entitled. Prejudgment interest removes the incentive to live off the profits until caught. The Court hereby finds that Rocket's request should be **GRANTED**.

## C. Permanent Injunction

Rocket submitted a motion for a permanent injunction on April 5, 2002, asserting that Quality should be enjoined based on the Panel's finding of willful infringement of the '264 patent. Rocket had included a request for injunctive relief in the complaint. Quality argues nevertheless that Rocket has waived its claim for an injunction by (1) failing to seek such relief before the Panel of arbitrators, and (2) failing to include the claim in its joint pretrial order dated April 16, 2002. Defendant's Affirmation in Opposition to Plaintiff's Motion for Permanent Injunction ("Def. Opp. to Injunction") at 2.

The parties had agreed in a March 29, 1999 stipulation that the arbitration would proceed under the rules of the American Arbitration Association, Def. Exh. 2 at ¶ 1, which allow an arbitrator to "grant any remedy or relief" that is deemed equitable. Patent Arbitration Rules of the American

340

Arbitration Association, as amended and effective September 2000, Rule 42. A later stipulation on January 18, 2000, however, allowed the Panel to arbitrate the issue of infringement of the '264 patent, while leaving to the district court the determination of remedies. Therefore, the issue of an injunction was not necessarily within the scope of matters before the Panel. The Court finds that Rocket's silence as to an injunction before the Panel does not constitute a waiver.

In addition, the Court does not find that the absence of Rocket's request for a preliminary injunction in the pretrial order constitutes a waiver. The rule that "[t]he pretrial order supersedes the pleadings and becomes the governing pattern of the lawsuit," *Madison Consultants v. Federal Deposit Ins. Corp.*, 710 F.2d 57, 67 (2d Cir.1983) (citations omitted), serves to frame the issues that will be addressed at trial and to prevent surprise. Rocket submitted its request for a preliminary injunction a few weeks preceding the trial and gave no indication that it would abandon its pursuit of the matter. Furthermore, permanent injunctions are routinely granted where there has been a finding of infringement. *Richardson v. Suzuki Motor Co., Ltd.*, 868 F.2d 1226, 1247 (Fed.Cir. 1989); *W.L. Gore & Associates, Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1281 (Fed. Cir.1988). Accordingly, the Court finds that Rocket did not waive the issue.

Pursuant to 35 U.S.C. § 283, the Court "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." The district court has the discretion to determine, based on the facts of the case, whether an injunction is necessary. *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1551 (Fed.Cir.1994); *Odetics, Inc. v. Storage Technology Corp.*, 185 F.3d 1259,

1272 (Fed.Cir.1999). Courts usually grant injunctive relief against an adjudged infringer, unless the public interest dictates otherwise. *Richardson*, 868 F.2d at 1247; *W.L. Gore*, 842 F.2d at 1281. "[A] patent is a form of property right, and the right to exclude recognized in a patent is but the essence of the concept of property." *BIC Corp. v. Thai Merry Co., Ltd.*, 1999 WL 893134, *5 (S.D.N.Y.1999) (*quoting Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed.Cir.1983)). Quality has not shown any public interest that should prevent the Court from issuing an injunction. The Court orders that Quality be permanently enjoined from marketing the Florence and Marseille lines of jewelry boxes, or any similar such boxes, which infringe Rocket's '264 patent.

### D. Calculation of Damages

The parties have provided the Court with an accounting of Quality's gross profits with respect to the Florence and Marseille lines. The only issue they dispute is whether certain components of Quality's operating expenses should be included as part of the total expenses to be deducted from the infringing profits. Defendant's Motion for in Limine Relief in Connection with the Trial for the Assessment of Profits Under 35 U.S.C.A. § 289 ("Def.Motion") at 8. For design patent cases, authority on the calculation of fixed expenses is scant, thus requiring the Court to use discretion. "Neither case law nor logic provides a clear rule for the proper treatment of fixed expenses in computing an award of profits." *Schnadig Corp. v. Gaines Mfg. Co., Inc.*, 620 F.2d 1166, 1172 (6th Cir.1980)(giving discretion to the trial court to determine how much of the infringer's fixed expenses should be used to reduce the recoverable profit).

By analogy, in copyright actions, the owner must first establish the infringer's

gross profits, and then the infringer has the burden of proving deductible expenses, *see* 17 U.S.C. § 504, and the courts determine what expenses should be deducted. The Court of Appeals for the Second Circuit has held that overhead expenses that do not assist in the production of the infringing item should not be credited to the infringer, and this determination is a question of fact. *Sheldon v. Metro–Goldwyn Pictures*, 106 F.2d 45, 54 (2d Cir.1939), *aff'd*, 309 U.S. 390, 60 S.Ct. 681, 84 L.Ed. 825 (1940). Consistently applied in this Circuit, *Sheldon* requires a court to (1) determine what categories of expenses are deductible based upon their nexus to the production of the infringing product, and (2) fairly allocate a portion of that overhead to the infringing item. *Hamil Am., Inc. v. GFI, Inc.*, 193 F.3d 92, 105–06 (2d Cir.1999); *See also Design v. K–Mart Apparel Corp.*, 13 F.3d 559, 565–66 (2d Cir.1994)(overhead expenses were appropriately deducted where there was sufficient nexus with the sale of the infringing item). The court in *Hamil* found that where infringement is willful, a district court should rigorously scrutinize overhead expenses. *Id.* at 107. Furthermore, "[a]ny doubts resulting from an infringer's failure to present adequate proof of its costs are resolved in favor of the copyright holder." *Design*, 13 F.3d at 564.

█ The parties here have calculated the amount of gross revenues earned by Quality from the Florence and Marseille lines. As to expenses, Rocket contends that, based on its accountant's findings, certain operating expenses calculated by Quality should not be deducted. Specifically, Rocket challenges Quality's bad debts, commissions, consulting and legal fees, salaries, discounts, travel, and entertainment. Def. Motion at 8. With Rocket's proposed adjustments, the total amount of recoverable profits is $65,905.

Damages Mem. at Exh. G; Def. Motion at 9. Based on Quality's calculations, which include the challenged expenses, the amount is $43,070. *Id.* Because Quality was found to be a willful infringer, the Court finds that its expenses should be treated with greater scrutiny. Quality has not provided any evidence that the objected-to expenses were sufficiently related to the production of the Florence and Marseille jewelry boxes. Therefore, the Court hereby adopts Rocket's calculations, which result in total recoverable profits of $65,905. Prejudgment interest shall be calculated beginning from the date of the infringement found by the Panel, February 5, 1999, to the date of this judgment.

## IV. CONCLUSION

In light of the foregoing, it is hereby ordered that Rocket recover $65,905 of Quality's profits from the infringement of Rocket's '264 patent, plus prejudgment interest. Furthermore, Quality is hereby permanently enjoined from selling any jewelry boxes similar to those sold under the Florence and Marseille trademarks.